IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DAVID WEBB,<br><br>    Plaintiff,<br><br>v.<br><br>ELIJAH SWENSEN, TRAVIS KEARL, ALICIA MARIE WASHINGTON, ANDY MUELLER, BENJAMIN REINKINS SOKOLIK, MICHAEL ASHMENT, BRETT JAY LYMAN, AND CLINT R. DRAKE, DEFENDANTS,<br><br>    Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 1:14-cv-00148-DB-DBP<br><br>District Judge Dee Benson<br><br>Magistrate Judge Dustin B. Pead |

## **INTRODUCTION**

This matter was referred to the Court under 28 U.S.C. § 636(b)(1)(B). (ECF No. 6.) On November 19, 2014, this Court granted pro se Plaintiff leave to proceed in forma pauperis. (ECF No. 2.) Plaintiff filed his initial complaint against the following Defendants: (1) Officer Elijah Swensen,[1] (2) Officer Travis Kearl, (3) Police Chief Michael Ashment, (4) Alicia Marie Washington, and (5) two fictitious John Doe Defendants (later identified as Defendants Mueller and Sokolik). (ECF No. 3.) The Court dismissed Plaintiff's initial complaint without prejudice, inviting him to file an amended complaint. (ECF Nos. 8, 13.)

Presently before the Court are a number of Plaintiff's motions. First, Plaintiff seeks recusal of the undersigned from this case. (ECF No. 18.) Plaintiff also separately filed an affidavit pursuant to 28 U.S.C. § 144 that he apparently intended as part of the recusal motion. (*See* ECF No. 20.) Plaintiff also filed another motion for recusal. (ECF No. 27.) The Court considers facts stated in all three filings to analyze Plaintiff's motion to disqualify pursuant to 28 U.S.C. § 455. The Court

---

[1] Plaintiff alternates between spelling this officer's name Swens<u>e</u>n and Swens<u>o</u>n. The Court will use Swensen throughout this report and recommendation to match the docket.

will separately address Plaintiff's affidavit pursuant to 28 U.S.C. § 144. Next, Plaintiff filed a motion to amend his complaint. (ECF No. 25.)

For the reasons set forth below, this Court **RECOMMENDS** the District Court **DENY** Plaintiff's various motions for recusal. (ECF Nos. 18, 20, 27.) The Court **FURTHER RECOMMENDS** the District Court **DENY** Plaintiff's motion to amend his complaint because the proposed amendment is futile. (ECF No. 25.)

## ANALYSIS

### I. PLAINTIFF'S MOTIONS FOR RECUSAL SHOULD BE DENIED[2]

Plaintiff's various recusal motions appear to take issue primarily with a docket entry made by the clerk's office terminating this case on April 28, 2015. Plaintiff indicates he spoke with staff from the undersigned's chambers on April 27, 2015, and understood that he would be permitted to file a motion to amend his complaint on April 28. (ECF Nos. 18, 27.) Plaintiff's affidavit indicates that he also believes recusal is warranted based on various adverse decisions. (ECF No. 20.) Primary amongst the targeted decisions is a report and recommendation issued by the undersigned in another of Plaintiff's cases, recommending he be placed the District of Utah's list of restricted filers. (*See* ECF No. 20.); *Webb v. Caldwell*, No. 15-59 (D. Utah, filed April 28, 2015). Plaintiff also mentions a "robbery discovered on Wednesday, 26 November 2014 . . . ." (ECF No. 20.) Finally, Plaintiff argues that the Court should be recused because it is tainted by knowledge that Plaintiff filed lawsuits against the U.S. Marshals' service. (*Id.*)

### a. 28 U.S.C. § 455

A judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Likewise, a judge must recuse if he has a

---

[2] The Court does not speak for the District Court. To the extent Plaintiff's motions seek recusal of the District Court, this Court offers no opinion on the matter.

personal bias concerning a party, financial interest in the litigation, or personal knowledge of disputed evidentiary facts concerning the proceeding. *Id.* § 455(b). "The test [under Section 455] is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). "The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. In applying the test, the initial inquiry is whether a reasonable *factual* basis exists for calling the judge's impartiality into question." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). As the Tenth Circuit has recognized, several matters do not satisfy the requirements for recusal under 28 U.S.C. § 455, including: "Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters . . . [and] prior rulings in the proceeding, or another proceeding, solely because they were adverse . . . ." *Cooley* at 993.

Here, Plaintiff's affidavit describes only adverse rulings of the Court coupled with unfounded conclusions and innuendo. For instance, Plaintiff concludes this Court exceeded its authority and ordered closure of Plaintiff's case. The facts do not support this conclusion. The docket shows the Court acted twice in this case before Plaintiff filed recusal motions. First, the Court granted Plaintiff's application to proceed in forma pauperis (ECF No. 2.); Second, it issued a report and recommendation to the District Court. (ECF No. 8.) Subsequent to granting Plaintiff's IFP application and prior to the motions regarding recusal, this Court issued no order.

Next, Plaintiff mentions a certain "robbery" that took place in November 2014. He wisely stops short of alleging that the court participated in this robbery. The only fact alleged is that records of Plaintiff's prior litigation were "stolen in the robbery discovered on Wednesday, 26 November 2014 . . . ." Plaintiff then notes that the Court cited to Plaintiff's same prior litigation in its report and recommendation in *Webb v. Caldwell*. No. 15-59 (D. Utah, filed April 28, 2015).

To the extent Plaintiff suspects the Court was involved in any robbery, the Court wishes to reassure Plaintiff that it was not. The Court need not engage in criminal behavior to obtain the records at issue; the records can be accessed through the Court's Electronic Case Filing System.

Finally, the Court wishes to address Plaintiff's conversation with its staff to arrange for an extension of time. The Court will not engage in a fact-finding expedition with its staff to determine what was said because this inquiry could create its own prejudice. Instead, the Court will take treat the allegation as true for this analysis. Regardless of any conversation, the Rules of Civil Procedure make clear that only the Court may grant extensions of time. Fed. R. Civ. P. 6(b). Indeed, only the Court may act in this case. No member of chambers staff has authority to act for the Court. Thus, the conversation with staff does not support a claim of bias for an action not taken by the Court. Instead, the Court mentions this to make absolutely clear to Plaintiff that he cannot obtain Court action by speaking with chambers staff. Based on the foregoing, Plaintiff has not indicated there is a proper basis for recusal under 28 U.S.C. § 455.

b. **28 U.S.C. § 144**

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term [session] at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S. C. § 144. Under the statute, once a timely and sufficient affidavit of bias or prejudice is filed the judge "must cease to act in the case and proceed to determine the legal sufficiency of the evidence." *Bell v. Chandler*, 569 F.2d 556, 559 (10th Cir. 1978). The filing of the affidavit

alone does not bring about a disqualification. *See United States v. Ritter*, 540 F.2d 459, 461–62 (10th Cir. 1976). Rather, an affidavit is only considered sufficient to support disqualification if the facts and reasons provided "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment" *Berger v. United States*, 255 U.S. 22, 24 (1921), or when a "reasonable man would conclude on the facts stated [in the affidavit] that the district judge had a special bias against the defendant." *United States v. Thompson,* 483 F.2d 527 (3d Cir. 1973); *see also* 28 U.S.C. § 144.

Plaintiff's affidavit is unable to satisfy the standard set forth in 28 U.S.C. 144. Other than referencing unfavorable judicial opinions issued by this court, Plaintiff fails to identify any personal bias or prejudice that this Court has against him. It is well established that an adverse ruling alone does not provide sufficient grounds for disqualification. *Mitchell v. Maynard*, 80 F.3d 1433, 1449 (10th Cir. 1996). And, while the Court takes allegations of its bias or prejudice very seriously, "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Brody v. President & Fellows of Harvard College,* 664 F.3d 10, 12 (1st Cir. 1981), *cert denied,* 455 U.S. 1027(1982). Upon review, Plaintiff's affidavit fails to sufficiently state a claim of bias or prejudice. Accordingly, the motions for recusal should be denied. (ECF Nos. 18, 20, 27.)

## II.     PLAINTIFF'S SECOND MOTION TO AMEND IS FUTILE

Plaintiff's proposed amendment is futile because he has not stated a viable cause of action against any of the named Defendants. Plaintiff filed his motion to amend one week after the Court issued its report and recommendation recommending dismissal of his claims. (ECF No. 12.) He filed the same document again nearly two months after the District Court adopted the report and recommendation. (ECF No. 14.) Plaintiff later filed a revised motion to amend,

seeking to add Defendants Drake and Lyman to the lawsuit. (ECF No. 25.) The first two motions appear moot because the claims in the proposed second amended complaint include the claims from the earlier motions to amend. Accordingly, the Court will recommend mooting the earlier motions and will analyze the most recent motion to amend along with the Second Amended Civil Rights Complaint ("Complaint"), below. (ECF No. 25, Ex. 1).

### a. Factual Allegations

Plaintiff claims that on September 14, 2014, he and another individual were sitting on the patio of an eatery in Ogden, Utah, when Defendants Mueller and Sokolik began harassing Plaintiff. (ECF No. 25, Ex. 1 at 7.) Plaintiff alleges that Defendants Mueller and Sokolik took photographs and video of Plaintiff, made "threatening gestures" toward Plaintiff, and yelled out that they would "kill" him. (*Id.* at 8–10.) Plaintiff exchanged heated words with Defendants Mueller and Sokolik, and called 911to report their conduct. (*Id.* at 9–10.)

Approximately ten minutes later, Officers Swensen and Kearl arrived and met with Defendants Washington, Mueller, and Sokolik, and then with Plaintiff. (*Id.* at 10.) Officers Swensen and Kearl said they were not concerned with the aforementioned Defendants' conduct and wanted to speak to Plaintiff about a complaint made by a woman, later identified as Defendant Washington. (*See id.* at 8–12.) Plaintiff asked the officers to arrest Defendants Sokolik and Mueller, but Officer Swensen said he only wanted to speak about Defendant Washington's call to 911. (*Id.* at 10.) Officer Swensen asked Plaintiff whether he had placed a rose on Defendant Washington's car. Plaintiff denied doing so. (*Id.* at 11.) Plaintiff alleges that sometime during the exchange Officer Swensen said "these two (2) White Males can do whatever they want to both of you and not be arrested for their actions." (*Id.*) Plaintiff is African American. (*Id.* at 16.) Plaintiff does not identify Mr. Renty's or Defendant Washington's race.

Officers Swensen and Kearl left the scene without making an arrest. (*See id.* at 12.) Plaintiff then describes several attempts to learn the identities of Defendants Sokilik and Mueller through public-record requests, and telephone calls with police. (*Id.* at 14–16.)

### b. Standard of Review

A court has discretion to deny a motion to amend "if the proposed amendment could not . . . withst[and] a motion to dismiss or otherwise fail[s] to state a claim." *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). A complaint is subject to dismissal unless it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For purpose of this analysis, a court "must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them" in a plaintiff's favor. *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002). "Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Finally, while the Court interprets Plaintiff's proposed pleadings liberally because he proceeds pro se, the Court cannot act as Plaintiff's advocate. *Id.*

### c. Plaintiff's Section 1983 Claim

#### 1. <u>Non-Government Defendants</u>

The Complaint fails to properly allege any federal cause of action against any private defendant. Reading the Complaint liberally, Plaintiff's primary federal claim appears to be a violation of his equal-protection rights pursuant to 42 U.S.C. 1983. To allege a cause of action under Section 1983, Plaintiff must allege facts that indicate the defendants each acted under color of state law. *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996). "The traditional definition of acting under color of state law requires that the defendant in a § 1983

action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (quotation marks and citations omitted).

Plaintiff does not allege facts that indicate Defendants Washington, Sokolik, Mueller, and Lyman, acted under color of law. Indeed, Plaintiff affirmatively indicates that these individuals are not state actors. (ECF No. 25, Ex. 1 at ) Accordingly, the Complaint fails to state a claim under Section 1983 against Ms. Washington, Mr. Sokolik, Mr. Mueller, and Mr. Lyman because Plaintiff does not allege they acted under color of law.

2. *Police Defendants*

Plaintiff's Complaint also attempts to allege a Section 1983 claim against Officer Swensen, Officer Kearl, and Chief Ashment under 42 U.S.C. § 1983. "The *Twombly* standard may have greater bite' in the context of a § 1983 claim against individual government actors, because '[such actions] typically include complex claims against multiple defendants.'" (ECF No. 8 (quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).) When the Court dismissed Plaintiff's initial complaint, it advised Plaintiff: "that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* (emphasis original).

Plaintiff's seventy-five page Complaint contains relatively few factual allegations. Despite receiving warning from the Court when it initially recommended dismissal, Plaintiff's factual allegations still do not identify how his rights have been violated by these Defendants. Plaintiff's primary contention appears to be that Officers Swensen and Kearl did not arrest Defendants Mueller and Sokolik. The most troubling allegation being:

> Officer Swens[e]n said you may be right, but here in Ogden there are few Black Men and these two (2) White Males can do whatever they want to both of you [Plaintiff and his companion, Mr. Renty] and not be arrested for their actions.

As the Court must accept the allegations and reasonable inferences as true, Plaintiff suggests that he heard a truly deplorable comment.[3] Nonetheless, he has not alleged violation of his civil rights. First, the Court already explained that lack of arrest itself is not actionable by Plaintiff on due process grounds. (*See* ECF No. 8 at 4.)

Second, Plaintiff suggests elsewhere in his complaint that he is attempting to assert a selective enforcement claim under the Equal Protection Clause. To plead a selective enforcement claim, Plaintiff must allege two elements: (1) the enforcement policy had a discriminatory effect and (2) it was motivated by a discriminatory purpose. *See U. S. v. Alcaraz-Arellano*, 441 F.3d 1252, 1263–64 (10th Cir. 2006).

### A. Discriminatory effect

#### 1. Selective Enforcement

To establish discriminatory effect in a selective enforcement case based upon race, Plaintiff must allege that he was stopped or arrested for some offense and that a similarly-situated individual of another race could have been, but was not, stopped or arrested for the same offense. *See id.* at 1264; *see also Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011) ("With any equal protection claim, the plaintiff must also demonstrate that he was treated differently than another who is similarly situated.") (alterations omitted).

Plaintiff's claim is deficient for two reasons. First, Plaintiff does not allege that he was stopped or arrested by police. Instead, Plaintiff describes a conversation he had with police after he called 911 to summon them. Plaintiff voluntarily encountered the police by calling 911 and

---

[3] The Court wishes to emphasize that it makes no finding of fact here. These statements must be treated as true based on the procedural posture of this case.

requesting them. Next, even assuming Plaintiff's interaction with police could charitably be considered a stop, he has not alleged that a similarly-situated individual of another race could have been stopped, but was not.[4] The right of equal protection "applies only when the difference in treatment involves individuals who are similarly situated." *Buhendwa v. Reg'l Transp. Dist.*, 553 F. App'x 768, 770 (10th Cir. 2014).

2. Race-based Denial of Police Protection

Finally, construing the Complaint as liberally as possible, it could be read to assert that the police denied Plaintiff police protection based on his race. *Carmichael v. City of New York*, 34 F. Supp. 3d 252, 261 (E.D.N.Y. 2014), *appeal dismissed* (Dec. 22, 2014) (noting that "selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens, is the prototypical denial of equal protection."). Yet, this claim likewise requires Plaintiff to plead comparators who were treated differently based upon race. *Id.* at 259.

As discussed above, Plaintiff fails to plead disparate treatment. Plaintiff does not allege that a comparator of another race received police protection when conduct similar to Defendants' was directed toward those comparators. Without alleging such disparate effect, Plaintiff's equal protection claim fails. Thus, even under the most liberal reading of Plaintiff's Complaint, he has not asserted a viable claim for violation of his civil rights. While the Court has concerns regarding Officer Swensen's alleged comment, it cannot permit Plaintiff to proceed without properly alleging the facts necessary to support his theory. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's

---

[4] To the extent Plaintiff intends to allege Defendants as comparators, he has not identified disparate treatment. The officers spoke to Plaintiff and Defendants after Plaintiff and Defendant Washington called police. The officers then left without making any arrest.

behalf." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173–74 (10th Cir. 1997). "Were the court to permit plaintiff's 'bare bones' claims to survive, the deference extended by courts to law enforcement officers would be compromised." *Cooper v. Sedgwick Cty., Kansas*, 206 F. Supp. 2d 1126, 1145 (D. Kan. 2002) (citing *U.S. v. Armstrong*, 517 U.S. 456 (1996)).

### B.  *Discriminatory intent or purpose*

In addition to discriminatory effect, a plaintiff in an equal protection suit must allege that discriminatory intent motivated the defendant's actions. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). Discriminatory intent can be inferred from the comment allegedly made by Officer Swensen. The same cannot be said for any conduct on the part of Officer Kearl. In fact, Officer Kearl denied any racial motivation for the his actions. Plaintiff told the officers that "if he and Mr. Renty had done the same [c]riminal [a]cts as these . . . two [w]hite [m]ales[,] we would be in handcuffs and charged with crimes." (ECF No. 25, Ex. 1 at 12.) First, this conclusory allegation is nothing more than speculation on Plaintiff's part. Moreover, after Plaintiff made this statement, Officer Kearl told Plaintiff that he was wrong. (*Id.*) Also, Plaintiff alleges that Officer Kearl was not present when Swensen allegedly made the statement noted in the preceding section. (*Id.* at 11–12.) Accordingly, Plaintiff has not alleged discriminatory intent or purpose on Officer Kearl's part.

### 3.  *Defendant Drake*

Plaintiff identifies Defendant Drake as a person who acted under color of law, but Plaintiff has alleged little else. Plaintiff does not plead facts sufficient to indicate Mr. Drake violated Plaintiff's civil rights. Plaintiff alleges that Mr. Drake is an attorney for Syracuse City and that he advised the Ogden City Records Review Board to "preclude providing evidence to Plaintiff Webb that would be material . . . ." (*Id.* at 7 (capitalization normalized).) Plaintiff makes no other

factual allegations regarding Mr. Drake. This conclusory allegation is insufficient to state a claim against Mr. Drake. Further, as best as the court can divine from the other allegations in Plaintiff's Complaint, Plaintiff believes he was somehow wrongfully deprived of the names of two individual defendants. Yet, Plaintiff admits elsewhere in his Complaint that he was provided with these names. (*See* ECF No. 25, Ex. 1 at 15.) Accordingly, Plaintiff has not alleged that Mr. Drake violated Plaintiff's civil rights.

Based on the foregoing, Plaintiff's proposed amendment to his Section 1983 claim (Count I) is futile.

### d. Plaintiff's remaining claims.

#### 1. Insufficient attempts to remedy deficiencies previously noted by court

In the initial complaint, Plaintiff only included factual allegations in his first claim for relief. The remaining claims alleged no facts. The Court instructed him to include factual detail for any remaining claims. Rather than plead additional facts, Plaintiff simply cut and paste facts from his first claim into some of the various other claims. Plaintiff's cut-and-paste efforts have done nothing to remedy the deficiencies noted earlier. On this basis alone, the court finds Plaintiff's amendment is futile. Nonetheless, given the Court's role in issuing this report and recommendation, it will set forth additional deficiencies with the remaining claims for the benefit of providing the District Court with an alternative basis to deny the motion to amend as futile.

#### 2. Even when construed liberally, the Complaint does not allege a viable claim for relief.

Alternatively, the amendment should be denied because the Complaint does not state any viable claim for relief. First, Plaintiff made no attempt to plead any facts in Counts and XII, XIII, XIV, XV, XVI, XVII, XXIV. The motion to amend should be denied as to these claims because they contain no factual allegations whatsoever. Instead, they merely recite legal principles.

*A. Conspiracy claims*

Plaintiff invokes 42 U.S.C. §§ 1985 & 1986 to allege that Officers Swensen and Kearl conspired to deprive Plaintiff of his civil rights. "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). "[A] plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.*

Here Plaintiff fails to plead any Constitutional injury or deprivation as described above. Moreover, he has not alleged facts to establish that there was any conspiracy between officers Kearl and Swensen. Instead, Plaintiff appears to infer a conspiracy from the mere fact that the two officers both responded to Plaintiff's call to 911 and that they spoke to one another before speaking with Plaintiff. This is insufficient to allege a conspiracy. Thus, Plaintiff's Section 1985 claim fails. "Having failed to allege a Section 1985 conspiracy, there is no viable Section 1986 claim for failure to stop the conspiracy." *See Stout v. U.S. ex rel. U.S. Marshal's Serv.*, No. 13-753, 2013 WL 5954780, at *5 (W.D. Okla. Nov. 4, 2013) (citing *Santistevan v. Loveridge,* 732 F.2d 116 (10th Cir.1984)). Accordingly, the motion to amend should be denied as it relates to Counts II and III because the proposed claims would be subject to dismissal.

*B. Title VI claims*

Plaintiff also attempts to invoke 42 U.S.C § 2000d (Title VI of the Civil Rights Act of 1964). Such claims are permissible only against entities that receive federal funds, not against individual employees of such entities. *See, e.g.*, *Sims v. Unified Gov't of Wyandotte Cty./Kansas City, Kan.*,

120 F. Supp. 2d 938, 954 (D. Kan. 2000). Plaintiff only appears to assert these claims against Officers Swensen and Kearl individually and they should therefore be dismissed. Likewise, even if these claims had been alleged against proper parties, Plaintiff has failed to plead discriminatory action, particularly on the part of any government agency. *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (stating that a plaintiff must show disparate treatment of comparators or other "circumstances giving rise to an inference of discrimination."); *see infra* Part I.a.2. Plaintiff has not alleged facts to suggest that a government entity discriminated against Plaintiff. Thus, proposed Counts VIII, IX, X, and XI are futile.

### C. Constitutional claims

Plaintiff also asserts claims under the First, Fourth, Sixth, and Fourteenth Amendments. The First and Fourteenth Amendments set limits on governmental encroachment on individual rights. *See United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 831 (1983) ("The Fourteenth Amendment protects the individual against *state action,* not against wrongs done by *individuals.*"); *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 567 (1972) ("[T]he First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on state action . . . ."). Plaintiff's First Amendment claim is asserted only against Defendants Washington, Mueller, and Sokolik. The Fourteenth Amendment claims include these Defendants. As discussed above, these Defendants are not governmental actors.

Next, the Fourteenth Amendment claim against Officers Kearl and Swensen is a carbon copy of Plaintiff's Section 1983 claim and fails for the reasons set forth above. *See infra* Part II.c.2. Further, while Plaintiff includes Defendants Ashment and Drake in his Fourteenth Amendment claim, he does not plead facts that establish any violation. Indeed, the only fact pled about either

individual is that Plaintiff submitted an "Official Complaint to Defendant Ashment." This does not establish any violation of the Fourteenth Amendment.

Next, the Sixth Amendment claim is alleged only against Defendant Ashment, but there are no factual allegations regarding Ashment's conduct, only a bare conclusion that he promulgated unidentified policies which Plaintiff contends violate his Sixth Amendment rights. The factual allegations in this portion of the Complaint describe several conversations Plaintiff had with various persons other than Mr. Ashment. It does not set forth a Sixth Amendment violation.[5]

Next, Plaintiff has not alleged any Fourth Amendment violation. "Violation of the Fourth Amendment requires an intentional acquisition of physical control. *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001) (quoting *Brower v. County of Inyo*, 489 U.S. 593 (1989)). Plaintiff's Fourth Amendment claim does not describe any search or seizure. Instead, Plaintiff describes his contact with police following Plaintiff's own 911 call to summon them. Based on the foregoing, proposed Counts IV, V, VI, and VII are futile.

### D.  State claims

Plaintiff's claim for intentional infliction of emotional distress fails because he does not allege that he suffered severe emotional distress. "The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it and that it is for the court to determine whether, on the evidence severe emotional distress can be found." *Schuurman v. Shingleton*, 26 P.3d 227, 233 (Utah 2001) (internal alterations and quotation marks omitted). Plaintiff does not allege any emotional distress as a result of Defendants' alleged actions.

---

[5] Plaintiff appears to suggest that he was wrongfully deprived of the names of two individual defendants. Plaintiff admits elsewhere in his Complaint that he was provided with these names. (*See* ECF No. 25, Ex. 1 at 15.)

Also, Plaintiff's defamation claim fails because he has not pled any false statement. "To state a claim for defamation, he must show that defendants published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007-08 (Utah 1994) (footnotes omitted). Plaintiff alleges that Defendant Washington defamed him. The only statement Plaintiff attributes to Defendant Washington is that Plaintiff was "on the Patio Area of Scrud's Gourmet Grub, LLC at 25th Street . . . ." (ECF No. 25, Ex. 1 at 67.) Plaintiff alleges that he was in fact at this location. (*Id.* at 68.) Thus, Plaintiff has not alleged any false statement.

Next, Plaintiff fails to state a claim for landowner liability because he affirmatively alleges he was a trespasser. "[T]he only duty a possessor of land owes to a trespasser is to not wilfully or wantonly injure him." *Whipple v. Am. Fork Irr. Co.*, 910 P.2d 1218, 1220 (Utah 1996); *Burningham v. Utah Power & Light Co., a Div. of PacifiCorp*, 76 F. Supp. 2d 1243, 1244 (D. Utah 1999) ("In other words, '[i]nturders who come upon the land of another without his approval have no right to demand that the landowner provide them a safe place to trespass.'"). Here, Plaintiff alleges only that Defendant Lyman left chairs on his restaurant's patio while the restaurant was closed. This does not constitute willful or wanton conduct. Further, Plaintiff does not allege he was injured as a result of any condition of the land.

Alternatively, the Court does not have original jurisdiction over these claims because Plaintiff alleges that he and all Defendants are Utah citizens. *See* 28 U.S.C. § 1332. The District Court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. Thus, even to the extent the District Court is able to discern a state cause of action that this Court could not, the District Court should

decline to exercise its supplemental jurisdiction over the state claims. Accordingly, Counts XIX, XXII, and XXIII do not state viable claims for relief.

*E. Nonclaims*

Finally, Plaintiff's claims labeled "vicarious liability," "malice," and "willful misconduct" do not state proper claims for relief. These are, respectively, a theory of secondary liability, a requisite to punitive damages under Section 1983, and a preemptive argument to a governmental immunity defense. *See Peterson v. Coca-Cola USA*, 2002 UT 42, ¶ 26, 48 P.3d 941, 948 ("[V]icarious liability does not arise because of actual negligence or fault."); *Dodds v. Richardson*, 614 F.3d 1185, 1197 (10th Cir. 2010) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Nieto v. Kapoor*, 268 F.3d 1208, 1222 (10th Cir. 2001) (finding that punitive damages may be awarded under Section 1983 when a defendant's conduct is "intentional, willful, and malicious."); Utah Code Ann. § 63G-7-202(3)(c)(i) (waiving certain governmental immunities where "the employee acted or failed to act through fraud or willful misconduct."). None of these provisions provides an independent basis of liability. Thus, Counts XVIII, XX, and XXI do not properly state claims upon which relief may be granted.

Based on the foregoing, Plaintiff's motion to amend should be denied as futile. The proposed amended claims would be subject to dismissal for failure to state a claim on which relief can be granted. *See Ketchum v. Cruz*, 961 F.2d 916, 921 (10th Cir. 1992); *see also Lujan v. Dreis*, 414 F. App'x 140, 143 (10th Cir. 2011) (affirming dismissal with prejudice of an in forma pauperis complaint that failed to state a claim for relief).

Out of an abundance of care for Plaintiff's pro se status, the Court will recommend denial of the motion to amend be without prejudice as it relates to claims against Officer Swensen.

Although Plaintiff failed to allege comparators, the Court cannot determine from the Complaint that no comparators exist. It is at least possible that comparators exist and the failure was a pleading oversight. Given that Plaintiff is proceeding pro se, he should be allowed one final chance to amend, however, this opportunity should only be offered for the claims against Officer Swensen in his individual and official capacities. In all other respects, the motion to amend should be denied with prejudice. Likewise, Plaintiff is specifically instructed that any future amendment must include allegations concerning the race of all involved parties, including Ms. Washington, Mr. Renty, and any comparators.

### III. RECOMMENDATIONS

For the reasons discussed above, this Court **RECOMMENDS** the District Court:

1. **DENY** Plaintiff's motion to disqualify the Court pursuant to 28 U.S.C. § 455. (ECF No. 18.).

2. **DENY** Plaintiff's request to disqualify the Court pursuant to 28 U.S.C. § 144. (ECF No. 20.)

3. **DENY** Plaintiff's second request to disqualify the Court pursuant to 28 U.S.C. 455. (ECF No. 27.)

4. **FIND MOOT** Plaintiff's initial motion to amend. (ECF No. 12.)

5. **FIND MOOT** Plaintiff's re-filed initial motion to amend. (ECF No. 14.)

6. **DENY** Plaintiff's second motion to amend his complaint. (Dkt. 25.) This denial should be without prejudice as it relates to claims against Officer Swensen, and with prejudice regarding the remaining claims and Defendants.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy,

any party may serve and file written objections. Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 23rd day of February, 2016.   By the Court:

_____
Dustin B. Pead
United States Magistrate Judge